UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT O. C.,[1]

                        Plaintiff,                **DECISION AND ORDER**

v.                                                  1:22-cv-384-JJM

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that he was not disabled. Before the court are the parties' cross-motions for judgment on the pleadings [8, 11].[2] The parties have consented to my jurisdiction [15]. Having reviewed their submissions [8, 11, 12], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 521-page administrative record [7] is presumed. On March 22, 2018, plaintiff filed an application for disability insurance benefits, alleging an onset date of December 28, 2017. Administrative Record [7] at 15. Plaintiff complained of depression, anxiety disorder, and bipolar disorder. Id. at 74. Plaintiff's claim was initially denied. Id. at 78.

---

[1]    In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]    Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

A.      **The Hearing**

Administrative Law Judge ("ALJ") John Noel conducted a video hearing on May 20, 2021. Id. at 33-71.  Plaintiff was represented by an attorney. Id. at 19, 35-36.

Plaintiff testified that he previously worked for various government entities coordinating literacy and education programs, grant writing, and teaching. Id. at 40-42.  He felt that his mental illness was interfering with his ability to concentrate, stay organized, and to deal with people and supervisors. Id. at 49. He had trouble communicating with others and experienced "anger management" issues. Id. He suffered panic attacks that would prevent him from going to work. Id. at 49-50. He was taking medications that made him groggy. Id. at 52. He lived by himself and took care of household necessities, though he would sometimes fall behind on them. Id. at 53-54. He allowed his driver's license to expire because he was having panic attacks about driving. Id. at 53. He did not leave the house much, except to go to the gym at midnight, and occasionally take care of his partner's grandmother. Id. at 55, 58, 59. He slept only about three to four hours at night. Id. at 56.

A vocational expert testified that a person with no exertional limitations but was limited to simple, routine tasks consistent with reasoning levels 1, 2, or 3 of the Dictionary of Occupational Titles ("DOT"), simple work-related decisions, and routine changes in work setting would be precluded from plaintiff's past relevant work. Id. at 66-67. He testified that such a person could perform certain jobs in the national economy, such as a cook or kitchen helper, commercial cleaner, and store or warehouse laborer. Id. at 67. Those jobs involve only occasional public contact. Id. at 68-69. However, being off task for more than 10% of the day or missing more than one day per month would be preclusive of all work. Id. at 68.

B.   **The ALJ's Decision**

On June 1, 2021, ALJ Noel issued a Notice of Decision denying plaintiff's claim. Id. at 19-31. He found that plaintiff had the severe impairments of bipolar disorder and anxiety disorder. Id. at 17. He assessed plaintiff with moderate limitations in the ability to concentrate, persist or maintain pace; and mild limitations in the ability to understand, remember, or apply information, to interact with others, and to adapt or manage oneself. Id. at 18. These assessments were based primarily on plaintiff's reported activities of daily living. Id.

ALJ Noel determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but that he would be limited to performing simple, routine tasks consistent with DOT reasoning levels 1, 2, or 3. Id. at 19. In reviewing plaintiff's treatment history, ALJ Noel cited plaintiff's activities of daily living, including reading and cooking, and his relatively robust leisure activities, including fishing, hunting, and playing basketball. Id. at 24. He noted improvements in plaintiff's condition with ongoing treatment and medication and the apparent amelioration of side-effects. Id.

ALJ Noel found that plaintiff was unable to perform past relevant work, but that he could perform various jobs that exist in significant numbers in the national economy. Id. at 25-26. Accordingly, he found that plaintiff was not disabled. Id. at 26-27.

C.   **The Medical Evidence**

ALJ Noel considered plaintiff's testimony and his medical history, which included mental health treatment records from several providers. Id. at 19-25.

In April 2017, plaintiff's treating primary care physician, Morris Cavalieri, M.D., started plaintiff on Aripiprazole (Abilify) to address his bipolar symptoms. Id. at 422. One month

later, his dosage was increased and a "marked improvement of anxiety and irritability" was reported. Id. at 413.

In August 2017, plaintiff returned to Dr. Cavalieri, reporting "a lot of stress in his life", having "a few" panic attacks, and depressed mood. Id. at 409. Plaintiff reported daily symptoms that affected his ability to work, sleep, and concentrate. Id. He reported feeling irritated, overwhelmed, and restless, with racing thoughts, sweating, and worrying. Id. Dr. Cavalieri observed that plaintiff was cooperative, but anxious and inappropriately irritable. Id. at 411. Dr. Cavalieri increased plaintiff's dosage of Abilify and started him on Alprazolam (Xanax). Id.

At a November 2017 follow-up appointment, plaintiff reported feeling "much better", but that his anxiety and other symptoms persisted. Id. at 407. Plaintiff's attitude was cooperative but irritable. Id.

In December 2017, plaintiff saw nurse practitioner ("NP") Gerald Frisicaro for a psychiatric evaluation. Id. at 380. He reported experiencing six months of "extreme stress", culminating in his quitting or being terminated from his job the previous week. Id. He reported being unable to work due to depressed mood, lack of energy, lack of focus, and feelings of hopelessness. Id. He reported no benefit from the Abilify and only temporary relief from the Xanax. Id. NP Frisicaro assessed plaintiff as being alert and oriented, well-kempt, pleasant, clear, engaged, coherent, with intact insight, judgment, and impulse control. Id. at 383-84. However, plaintiff's mood was "significantly depressed" and anxious, and he struggled with focus and feeling overwhelmed. Id. at 384.

At a follow-up on January 9, 2018, plaintiff saw NP Frisicaro and reported a positive response to medications and denied side effects. Id. at 387. His mood was improved, but

he was still depressed and struggled with focus. Id. NP Frisicaro increased plaintiff's lamotrigine (Lamictal) and continued his other medications. Id.

On March 8, 2018, plaintiff reported to NP Frisicaro that his sleep and depression had improved, but his anxiety and excessive worrying continued. Id. at 394. Plaintiff was now taking escitalopram (Lexapro) daily, Lamictal at night, and clonazepam at night and as needed for anxiety. Id.

At a March 23, 2018 appointment at his primary care facility, plaintiff "deni[ed] anxiety and depression" to Erin Brownell, P.A. Id. at 400. PA Brownell assessed those conditions as stable and continued plaintiff on current medications. Id. at 403.

On April 4, 2018, plaintiff attended individual therapy with social worker Susan Rimer, in which he reported that he had been reading and that his anxiety and concentration had improved. Id. at 462.

On April 25, 2018, plaintiff reported to psychiatrist Melissa Heffler, M.D. that he remained depressed, and was experiencing social isolation, poor hygiene, and difficulty with concentration. Id. at 464. He reported his "mood stabilizer" was working. Id.

On May 4, 2018, Disability Determinations Services medical consultant G. Kleinerman, M.D.,[3] completed a "Psychiatric Review Technique (PRT)" of a limited portion of plaintiff's medical records, and concluded that "[t]here is insufficient evidence to evaluate the claim". Id. at 76-77.

On May 3, 2018, plaintiff reported to NP Frisicaro that he was sleeping better and his depression had improved some, but he continued to struggle with anxiety, isolation, and loss of focus. Id. at 469. NP Frisicaro increased Lamictal and added bupropion (Wellbutrin). Id.

---

[3]   See ALJ Decision [7] at 25. Dr. Kleinerman's full name is not stated in the record.

On May 10, 2018, plaintiff reported to Ms. Rimer that he was having issues driving, cleaning, and personal hygiene due to lack of motivation. Id. at 472. He was working with vocational services to find a part-time job. Id. At another session on May 24, 2018, plaintiff reported feeling optimistic due to having an upcoming date. Id. at 474.

On July 23, 2018, at another session with Ms. Rimer, he reported that the relationship was going well, and he was "very happy". Id. at 482. On the same day, plaintiff reported to NP Frisicaro that he was doing better and sleeping well. Id. at 483.

On August 21, 2018, plaintiff told Ms. Rimer that he was doing well, he is happy with his relationship, and he is interested in working again. Id. at 487.

On September 6, 2018, plaintiff called the Lakeside Clinic and reported that he had moved and wanted his case closed at the clinic. Id. at 488. He said that he was feeling very good and content in his life. Id. He would follow up with a local outpatient clinic. Id.

In March 2019, plaintiff attended a physical examination at the Chautauqua Center, where he reported feeling well with minor mental health complaints, but was sleeping poorly. Id. at 451.

In September 2019, plaintiff appeared for a psychiatric medication management appointment with Caillean McMahon-Tronetti, D.O. Id. at 445. Dr. McMahon-Tronetti's observations of plaintiff were largely positive, including that plaintiff had normal mood and affect, was conversational, and displayed appropriate insight and judgment. Id. Plaintiff was continued on medications. Id.

On February 24, 2020, Dr. McMahon-Tronetti reported that plaintiff was "cheery and pleasant" and that his sleep was "excellent" with the assistance of olanzapine. Id. at 442. Plaintiff did not appear anxious, and his attention and concentration were adequate. Id. Dr.

McMahon-Tronetti made similar findings at a follow-up appointment on April 20, 2020. Id. at 501.

On July 8, 2020, plaintiff reported to Dr. McMahon-Tronetti that his sleep was good but his appetite was not. Id. at 498. His mood was more irritated, but he acknowledged that he had been missing some doses of his medication. Id.

At follow-up appointments with Dr. McMahon-Tronetti in September and November 2020, plaintiff reported his sleep and appetite were good and he had been enjoying leisure activities of fishing, bike riding, walking the dog, and cooking. Id. at 494-95. Dr. McMahon-Tronetti found that plaintiff had adequate attention and concentration, and that his memory, judgement, and insight were intact. Id.

## ANALYSIS

**A.     Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York, Inc. v. NLRB, 305 U.S. 197, 229 (1938); *see also* Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Colgan v. Kijakazi, 22 F.4th 353, 359 (2d Cir. 2022) ("[a]lthough . . . the evidentiary threshold for the substantial evidence standard 'is not high,' . . . the substantial evidence standard is also not merely

hortatory: It requires relevant evidence which would lead a 'reasonable mind' to concur in the ALJ's factual determinations").

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. See Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      The ALJ's RFC determination was supported by substantial evidence.**

Plaintiff argues that ALJ Noel erred by formulating an RFC with no medical opinion assessing plaintiff's functional abilities in the record. [8-1] at 10-14. He argues that ALJ Noel was required to develop the record by obtaining medical opinion evidence, from either plaintiff's treating providers or a consultative examiner. Id. at 14-16. In response, the Commissioner argues that ALJ Noel's decision was supported by "ample evidence" of plaintiff's functional abilities, that there are no "obvious gaps" in the record, and that plaintiff cites no evidence demonstrating greater limitations than those in the RFC. [11-1] at 9-17. I agree with the Commissioner.

It is undisputed that the administrative record lacks a medical opinion, as that term is defined by Social Security Administration ("SSA") regulations. See 20 C.F.R. §404.1513(a)(2) ("[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions"). However, the Second Circuit has held that "a medical source statement or formal medical opinion is not necessarily required", where "'the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity'". Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (Summary

Order) (*quoting* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013) (Summary Order)). Medical opinion evidence is just one of several categories of evidence for the ALJ to consider. *See* §404.1513 ("Categories of evidence").

SSA regulations state that an ALJ "may" request a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim". §404.1519a(b). In the absence of those conditions, "the failure to obtain such opinion statements does not make an RFC assessment defective". Schrader v. Saul, 2020 WL 2847276, *6 (W.D.N.Y. 2020); *see* Tankisi, 521 Fed. App'x at 34. This regulatory language dovetails with "the ALJ's general duty to develop the administrative record", which "applies even where the applicant is represented by counsel", but is implicated "only where there are 'obvious gaps' in the administrative record". Eusepi v. Colvin, 595 F. App'x 7, 9 (2d Cir. 2014) (Summary Order); *see* Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information"). "[O]bvious gaps" in the administrative record has been defined to include missing treatment records, as well as medical opinions that are inconsistent or vague. Thomas v. Commissioner of Social Security, 2022 WL 523544, *7 (E.D.N.Y. 2022). Plaintiff does not identify any missing treatment records, nor does he point to any inconsistency or ambiguity in the record that requires resolution.

The ALJ, not any medical source, is ultimately responsible for formulating a claimant's RFC. *See* 20 C.F.R. §§404.1546(c), 404.1527(d)(2) and §§416.946(c), 416.927(d)(2); Curry v. Commissioner of Social Security, 855 Fed. App'x 46, 48 (2d Cir. 2021) (Summary Order). "Accordingly, the issue is whether the record is clear[] and contains some useful

assessment of the claimant's limitations from a medical source sufficient to support the RFC finding." Williams v. Commissioner of Social Security, 366 F. Supp. 3d 411, 417 (W.D.N.Y. 2019); *see also* Muhammad v. Colvin, 2017 WL 4837583, *4 (W.D.N.Y. 2017).

In formulating the RFC, ALJ Noel reviewed plaintiff's robust treatment record, which spanned over three years and included detailed recitations of plaintiff's evolving symptomology and contemporaneous assessments of plaintiff's mood and affect. [7] at 19-25. While early entries indicated that plaintiff experienced high levels of stress and anxiety in connection with a job, from which he resigned or was terminated in late 2017, subsequent entries largely paint a picture of improving mental health and successful management of symptoms through medication and lifestyle changes. Id. at 24.

In 2017, plaintiff complained of excessive stress, panic attacks, depression, lack of concentration and was observably anxious and irritable. *See* id. at 380-84, 407, 409. The records from early 2018 reflect modest improvement in plaintiff's symptoms as he attended therapy and providers adjusted his medications. *See* id. at 394, 400-03 (denying anxiety and depression), 462 (reporting improvements in anxiety and concentration), 464 (reporting the "mood stabilizer" was working), 469, 472. By mid-2018, plaintiff reported doing well, being "very happy", sleeping better, and that he began looking for work, albeit part time. Id. at 472, 474, 482-83, 487. The records from that point through early 2020 indicate only minor mental health complaints, with plaintiff primarily reporting feeling "very good and content in his life" and happy in a new relationship and living arrangement. *See* id. at 445, 451, 488, 501. Observational assessments by providers indicated that plaintiff had normal mood and affect, was "cheery and pleasant", did not appear anxious, and displayed adequate attention and concentration. Id. at 442, 445, 201.

I conclude that this record, combined with ALJ Noel's findings regarding plaintiff's activities of daily living which included household tasks, caring for pets, and cooking, as well as leisure activities including fishing, playing basketball, reading (id. at 24), constitutes sufficient evidentiary support for the RFC determination. ALJ Noel's considerations and findings fall within the bounds of the controlling regulations and caselaw. See Monroe, 676 F. App'x at 8 (affirming where the ALJ relied on "descriptions of Monroe's symptoms, . . . contemporaneous medical assessments of Monroe's mood, energy, affect . . . [as well as] well-documented notes relating to Monroe's social activities relevant to her functional capacity - such as snowmobile trips, horseback riding, and going on multiple cruise vacations"); Schrader, 2020 WL 2847276 at *7 ("[t]he ALJ's assessment of plaintiff's mental functioning was reasonable and common-sense based on a complete record before her [including] . . . three years of detailed mental health treatment notes which contained contemporaneous assessments of plaintiff's mental functioning").

Moreover, it is ultimately plaintiff's burden to prove a more restrictive RFC than the one assessed by the ALJ. See Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (Summary Order). Plaintiff did not produce a medical opinion, nor does he identify any specific limitations supported by the medical evidence of record that should have been incorporated into the RFC. While plaintiff had serious mental health conditions that required ongoing treatment, the evidence of record is sufficient to support ALJ Noel's conclusion that plaintiff was effectively managing those conditions and was capable of performing simple, routine tasks with modest cognitive demands. See John B. v. Kijakazi, 2023 WL 6210917, *9 (D. Conn. 2023) ("plaintiff's mental impairments were mostly controlled with medication and therapy when the plaintiff was actively treating. . . . I am not persuaded by the plaintiff's contention that his

mental impairments were more debilitating than the ALJ assessed [simple, routine tasks with occasional interaction with the public and no collaborative work or teamwork]"); Lesanti v. Commissioner of Social Security, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020) ("[t]he ALJ acknowledged Plaintiff's reports that her symptoms 'crop up at times,' but assessed the entirety of the record to conclude that Plaintiff's medications were generally effective at controlling her symptoms").

C.  **The ALJ adequately evaluated the impact of stress on plaintiff's ability to work.**

Plaintiff further argues that ALJ Noel erred by failing to make a sufficiently specific inquiry into his ability to handle stress. [8-1] at 16-18. While I agree with plaintiff that an individualized discussion of a claimant's stressors and their effect the ability to work can be warranted in the appropriate case (see SSR 85-15, 1985 WL 56857), here, ALJ Noel considered plaintiff's treatment history, contemporaneous medical assessments, and his statements to providers, and concluded that plaintiff's underlying condition had improved to a point such that the barriers to work that existed in 2017 no longer did. [7] at 24. Indeed, plaintiff expressed a willingness to return to work, if presumably in a different field. Id. at 472, 487.

In any event, plaintiff points to no specific additional stress-related restriction that was required by the evidence of record, and the caselaw supports the proposition that a restriction to simple, routine work with only occasional contact with others sufficiently accounts for mild-to-moderate, stress-based limitations. See Ridosh v. Berryhill, 2018 WL 6171713, *4 (W.D.N.Y. 2018) (limitation to unskilled work accommodates mild-to-moderate limitations in dealing with stress); Washburn v. Colvin, 286 F. Supp. 3d 561, 566 (W.D.N.Y. 2017) ("a limitation to unskilled work sufficiently accounts for moderate limitations in work-related functioning"); cf. Celia A. B. v. Commissioner of Social Security, 2022 WL 4225540, *13

(N.D.N.Y. 2022) ("the ALJ's RFC determination is not based on substantial evidence because the ALJ failed to discuss and resolve any conflicts in the record concerning plaintiff's stress[, and because t]he ALJ did not limit plaintiff to simple, unskilled, or low stress work").

For all these reasons, remand is not required.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [11] is granted, and plaintiff's motion [8] is denied.

**SO ORDERED**.

Dated: February 6, 2025

/s/ Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge